IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAVIER MERCADO VAZQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>HON. VIRGILIO OLIVERA-OLIVERA, et al.,<br><br>Defendants. | CIVIL NO. 21-1620 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Javier Mercado Vázquez ("Plaintiff") filed the instant case seeking redress for alleged politically motivated adverse employment actions taken against him by officials of the Municipality of San Germán. Defendants are Virgilio Olivera Olivera ("Olivera"), sued in his personal and office

al capacity as mayor of San Germán, Víctor González Morales ("González", collectively "Defendants") also sued in his personal and official capacity as head of the municipal Federal Programs Department, and the Municipality of San Germán.

Defendants Olivera and González are members of the New Progressive Party ("NPP"), which is the party that won the San Germán's municipal election in 2020. Plaintiff, a lifelong Popular Democratic Party ("PDP") supporter, alleges that after the change in government in 2020, Defendants removed him from a position he occupied for approximately fifteen (15) years as Sergeant at Arms and appointed him to a transitory contract job, harassed and discredited him, made politically motivated comments and

ultimately crafted false accusations to justify their failure to renew his appointment, all because of his political affiliation.

Before the Court now is a "Motion for Summary Judgment" (Docket No. 37) filed by personal capacity Defendants, as well as Plaintiff's Opposition thereto (Docket No. 46), Defendants' Reply (Docket No. 57) and Plaintiff's Sur-reply (Docket No. 62). The Municipality of San Germán and Defendants Olivera and González, in their official capacity, filed a motion to join the personal capacity Defendants' Motion filed at Docket No. 37, which the Court granted. (Docket Nos. 40 and 41).

Defendants proffer that the case must be dismissed because Plaintiff failed to establish the elements of a *prima facie* case of political discrimination against either of them. In the alternative, they contend that they would have made the decision not to renew Plaintiff's contract regardless of his political affiliation under the landmark case of Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977) (offered as the "Mt. Healthy defense"). Finally, they aver they are also shielded under the doctrine of qualified immunity.

Plaintiff, on the other hand, argues there are issues of fact regarding the *prima facie* elements that prevent the Court from granting summary disposition of this case, and that Defendants' Mt. Healthy and qualified immunity defenses fail.

For the reasons explained below, Defendants' Motion for Summary Judgment is DENIED.

## STANDARD

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 3 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 3
_____

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed material if it could potentially affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 4 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 4
_____

facts." Loc. Rule 56 (c).   If they so wish, they may submit a separate statement of facts which they believe are in controversy.

## UNCONTESTED FACTS

1. Plaintiff was an active PDP supporter and is a resident of the Rosario ward in the Municipality of San Germán.  D. Exhibit A, p. 10, l. 4-11; p. 12, l. 12.

2. Plaintiff has supported the PDP for many years, going from initially posting political propaganda, to working as a polling station officer, to alternate Electoral Commissioner for electoral precinct number 43, and finally as the Commissioner for that precinct.  P. Exhibit 1, p. 10, l. 4-16.

3. Plaintiff worked as Sergeant of Arms at the San Germán Municipal Legislature under the prior PDP administration from May 2004 to January 11, 2021.  D. Exhibit A, p. 17, l. 12-14; p. 18, l. 8-25; D. Exhibit D; D. Exhibit E.

4. Defendant Olivera has been President of the NPP in San Germán since 2014. He was elected mayor of San Germán in November 2020 and took the oath of office in January 2021.  D. Exhibit C, p. 7, l. 16-25.

5. When the new Municipal Legislature came on board, they renewed Plaintiff's appointment as Sergeant of Arms temporarily from January 11, 2021 until January 31, 2021.  D. Exhibit A, p. 19, l. 1-23; p. 24, l. 9-15; D. Exhibit D.

6. After the change in municipal leadership, Plaintiff was recommended for a transitory position in the Federal Programs Department at the Municipality of San Germán.  D. Exhibit A, p. 28, l. 1-25; D. Exhibit C, p. 25, l. 14-25.

7. Plaintiff's transitory appointment started on February 1, 2021, and lasted until June 30, 2021.  Plaintiff's appointment was extended from July 1, 2021

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 5 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 5
_____

      until September 30, 2021.  D. Exhibit A, p. 29, l. 1-25; p. 30, l. 1-7; D. Exhibit F.

8. Defendant González was offered the position of Director of the Federal Programs Department in the Municipality of San Germán by Defendant Olivera.  D. Exhibit B, p. 12, l. 5-11.

9. Before arriving in Puerto Rico in 2012, Defendant González was a teacher in Massachusetts.  D. Exhibit B, p. 11, l. 1- 10.

10. Defendant González started working as Director of the Federal Programs Department on January 11, 2021.  D. Exhibit B, p. 12, l. 12-25; p. 13, l. 1. He met Plaintiff on February 1, 2021, Plaintiff's first day working at the Federal Programs Department.  D. Exhibit B, p. 17, l. 13-18.

11. Plaintiff's transitory appointment expired on September 30, 2021 and was not renewed.  D. Exhibit A, p. 50, l. 16-25; D. Exhibit F.

12. On September 20, 2021, Plaintiff received several written reprimands from Defendant González regarding incidents at work. The next day, he was referred to the State Insurance Fund for treatment and did not return to work.  D. Exhibit 1, p. 62, l. 22-25; D. Exhibit A, p. 63, l. 1-11.

13. The first document was authored by Defendant González and dated September 2, 2021, titled "Incident Report."  It concerned comments Plaintiff made about staff in the Mayor's office and his behavior towards Ms. Lucy Fernández and Mr. Juan Montalvo. Plaintiff was found to have been in violation of the personnel regulations and sanctioned with a written

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 6 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 6
_____

reprimand. The document also warned him of the possibility of more severe sanctions, including suspension and termination. D. Exhibit I, pp. 1-2.

14. The second document was authored by Defendant González and dated September 15, 2021, also titled "Incident Report." It concerned comments Ms. Ivonne Irizarry told Defendant González that Plaintiff had supposedly said to third parties, Mr. Arnaldo Martínez and to Ms. Lucy Fernández. Plaintiff was found to have been in violation of the personnel regulations and sanctioned with a written reprimand. The document also warned Plaintiff of the possibility of more severe sanctions, including suspension and termination. D. Exhibit J, pp. 1-2.

15. The third document authored by Defendant González was dated September 16, 2021, also titled "Incident Report." This one contained complaints about Plaintiff's attitude, but did not find any violations to the personnel regulations or impose any sanctions. D. Exhibit K, p. 1.

16. The fourth document authored by Defendant González and tendered to Plaintiff on September 20, 2021 was titled "Incident Report" and was dated September 17, 2021. The document contained Defendant González' version of an incident where Plaintiff used an official vehicle to perform official business, and found violations to the personnel regulations. The document sanctioned Plaintiff with a written reprimand and warned him of the possibility of more severe sanctions, including suspension and termination. D. Exhibit L, pp. 1-3.

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 7 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 7
_____

17. Defendant González admitted in his deposition that he was not the nominating authority and, as such, he lacked the authority to impose sanctions.  P. Exhibit 2, p. 43, l. 20-25; p. 44, l. 1-10.

18. After four (4) written reprimands were given to Plaintiff, on September 20, 2021 Plaintiff tried to meet with Defendant Olivera, but his meeting requests were not granted.  D. Exhibit A, p. 38, l. 14-17.

19. The second time Plaintiff tried to speak with Defendant Olivera, he was told that, if he had any situations with his supervisor, it needed to be discussed with the Human Resources Department.  D. Exhibit A, p. 57, l. 1-12.

20. On September 21, 2021, Plaintiff tendered a written response to all the memoranda that had been handed to him the previous day by Defendant González.  The letter was addressed to Defendant Olivera and was duly received by the Mayor's Office and two other municipal dependencies.  P. Exhibit 4.

21. On September 30, 2021, the last day of his appointment, Defendant González evaluated Plaintiff and awarded him an average score of 1.3 out of a possible 3.  Defendant González recommended Plaintiff's appointment not be renewed.  P. Exhibit 3.

22. The evaluation contained a certification indicating that the document had been discussed with the employee, that he could petition a supervisor within the employee's same department for a review of the same and, if applicable, could petition the Human Resources Office for further review. The evaluation was not signed by Plaintiff, as he was out of the office on leave mandated by

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 8 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 8
_____

        the State Insurance Fund.  P. Exhibit 3, p. 4.

23.    On September 30, 2021, the last day of Plaintiff's contract and on the day his performance evaluation was dated and submitted, Plaintiff was on leave as ordered by the State Insurance Fund.  P. Exhibit 5; P. Exhibit 6.

24.    Supervisors performing evaluations are required by municipal regulations to: 1) be trained in the evaluation system; and 2) jointly consider the results of the evaluation with the employee.  P. Exhibit 7, § 9.2.

25.    The municipal regulations also require that there be mechanisms available to review evaluations to preserve the objectivity of the evaluation system.  P. Exhibit 7, § 9.2.

## LEGAL ANALYSIS

**A. First Amendment.**

It has long been held that freedom of association is a core activity protected by the First Amendment. <u>Padilla-García v. Guillermo Rodríguez</u>, 212 F.3d 69, 74 (1st Cir. 2000) (citing <u>Elrod v. Burns</u>, 427 U.S. 347, 96 S.Ct. 2673 (1976)).   Many years ago, the United States Supreme Court held that non-policymaking public employees are protected from adverse employment decisions based on their political affiliation.  <u>Elrod</u>, 427 U.S. at 354, 96 S.Ct. at 2680; <u>Branti v. Finkel</u>, 445 U.S. 507, 516, 100 S.Ct. 1287, 1294 (1980); <u>Rutan v. Republican Party</u>, 497 U.S. 62, 75, 110 S.Ct. 2729, 2737 (1990).  While doing so, the Supreme Court emphasized the right to associate with the political party of one's choice as a basic constitutional freedom, a right which flows naturally from the principle that "'debate on public issues should be uninhibited, robust, and wide-open.'"  <u>Elrod</u>, 427 U.S. at 357, 96 S.Ct. at 2682 (quoting <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 270, 84

S.Ct. 710, 721 (1964)). As applicable to the present case, "[a] municipality may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation", and the fact that such an employee does not have a reasonable expectation of employment renewal does not defeat a First Amendment claim. Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997); Figueroa v. Aponte-Roque, 864 F.2d 947, 951 (1st Cir. 1989).

A *prima facie* case of political discrimination based on the First Amendment must establish four (4) elements: "(1) that the plaintiff and defendant have opposing political affiliations; (2) that the defendant is aware of the plaintiff's affiliation; (3) that an adverse employment action occurred; and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortíz v. Ortíz-Vélez, 630 F. 3d 228, 239 (1st Cir. 2010); Martínez Vélez v. Rey Hernández, 506 F.3d 32, 39 (1st Cir. 2007).

Even if a plaintiff can establish those four (4) elements, there is no constitutional violation if the defendant can show the Mt. Healthy defense, to wit, (i) that it would have taken the same action anyway, and (ii) that it would have done so for legitimate reasons that are not unconstitutional. Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 124 (1st Cir. 2004)(citing to Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Díaz-Báez v. Alicea Vasallo, Civil No. 10-1570 (CVR), 2019 WL 8501708, at *15 (D.P.R. Mar. 29, 2019). If the defendant makes this showing, the plaintiff may counter the proffered non-discriminatory motivation by providing direct or circumstantial evidence to show that "discrimination was more likely than not a motivating factor." Padilla-García, 212 F.3d at 77; Alberty v. Méndez, Civil No. 17-2385 (RAM), 2023 WL 1784543, at *4 (D.P.R. Feb.

6, 2023).

Defendants aver that the instant case must be dismissed because, looking at the evidence, Plaintiff cannot meet elements two (2) and four (4) because neither Defendant knew Plaintiff personally or his political affiliation. Whether or not Defendants knew of Plaintiff's political affiliation is in turn, a necessary precondition for a finding that Defendants did not renew Plaintiff's contract because they knew he was a PDP militant. Defendant Olivera stated in his deposition he did not know Plaintiff personally, did not know Plaintiff worked at the municipal legislature as Sergeant at Arms until he was sworn in, and never talked politics with him. Defendant Gonzalez' position is that he lived in Massachusetts until 2012 when he moved to Puerto Rico, was never active in politics and likewise did not know Plaintiff or his political affiliation before Plaintiff began working in his department in February 2021.

To survive Defendants' motion, Plaintiff is now required to show the existence of a factual dispute as to these issues, and Plaintiff has brough forth direct evidence to do just that. He has proffered evidence which if believed by a jury, establishes Defendants' actions were likely undertaken by political motivations.

As to the second element, Plaintiff has shown that the Mayor is from Plaintiff's same ward in a small town, attended school with Plaintiff's brother, and was taught by Plaintiff's father. Plaintiff additionally occupied several well-known positions within the PDP, initially posting political propaganda and later working as a polling station officer, as alternate PDP Electoral Commissioner for electoral precinct number 43, and finally as PDP's Commissioner for said precinct. This is substantially more knowledge than the defendants had in the case cited by Defendants herein for this proposition, González-De-

Blasini v. Fam. Dep't, 377 F.3d 81 (1st Cir. 2004). It is a well-established norm that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 7 (1st Cir. 2015).

Furthermore, Plaintiff's testimony is that both Defendants Olivera and González made direct comments to him, including that he (Olivera) did not want to see, anyone who he had helped, campaigning against him at a meeting where Plaintiff and other PDP members were present; that the people had voted against "them" (referring to the PDP) so things could now be done "our" way (said by González, referring to the NPP); and that the island was a mess because of the PDP and this was the reason people in San Germán had now voted for "them" (referring to the NPP), among others.

These statements, allegedly uttered by Defendants, constitute direct evidence of discriminatory animus, and could be construed by a jury to be an admission by both Defendants Olivera and González that the ultimate decision to terminate Plaintiff's employment was due to his political affiliation. See Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000) (direct evidence consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision); see also Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 44 (1st Cir. 2007) (noting that a jury could reasonably infer that the defendant was aware of the plaintiff's affiliation based on testimony that she "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria.").

The evidence submitted by Plaintiff, taken together and viewed in the light most favorable to him as the non-moving party, could lead a jury to reasonably infer that Defendants' actions were politically motivated. Issues of fact exist as to Defendants'

awareness of Plaintiff's political affiliation and by extension, to whether political discrimination was a substantial or motivating factor in the decision not to renew the contract, which preclude summary judgment. Resolving this classic case of conflicting testimony by the three major players in this case is precisely what a jury's duty consists of. See Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 53 (1st Cir. 2021) (noting that, in deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Whether or not this will be conclusively decided in the end is a matter left for the jury.

The Court finds Defendants' Mt. Healthy defense likewise cannot prosper. Anchored on the assumption that Plaintiff cannot meet the *prima facie* elements, Defendants argue that Defendant Olivera did not know Plaintiff's political affiliation (or knew him at all, for that matter) and thus, he would have taken the same action of not renewing Plaintiff's contract anyway. This decision, in turn, was based on Defendant Gonzalez' drafting of four (4) incident reports complaining of Plaintiff's actions and behavior. Defendants aver that the non-renewal of Plaintiff's contract was based instead on these incidents and deny it was because of Plaintiff's political affiliation.

The above justification may very well be enough to defeat Plaintiffs' *prima facie* case at trial if believed by a jury, but at this juncture, to defeat summary judgment Plaintiff may "discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-García, 212 F.3d at 77 (noting that the evidence by which the plaintiff established her *prima facie* case may suffice for a factfinder to infer that the defendant's

reason is pretextual and effectively checks summary judgment).

The Court finds Plaintiff has brought forth enough evidence to cast doubt on Defendants' motives and to show that his political affiliation was likely a motivating factor in the non-renewal of his appointment. To begin with, Plaintiff's termination was effected via an undated, two-sentence recommendation letter signed by Defendant González to Human Resources Director Maritza Horta, which failed to indicate any reason therefor. This very short letter sits in a vacuum, as the record is devoid of any evidence as to when it was drafted or delivered.

Additionally, Defendant González submitted a performance evaluation done on Plaintiff's final day of work, awarding him a score of 1.3 of a possible 3. This evaluation was never discussed with Plaintiff, in contravention of municipal policy, and was done while he was not even present at work as he had reported to the State Insurance Fund several days before.

The record also contains four (4) written reprimand letters drafted by Defendant González which were all given to Plaintiff on the same day, September 20, 2021, just ten (10) days before his contract expired. They are all dated within a fifteen (15) day time span, imposing sanctions on Plaintiff. The letters were not signed by the Mayor, and were issued without due process as Plaintiff was never asked to explain his version of events. Even worse, several letters concerned incidents that were not witnessed by Defendant González and relied on third party statements. Plaintiff only told his version regarding all the events later in writing, via a letter delivered to the Mayor's office, but he never got to speak to Defendant Olivera personally about the allegations raised against him.

Moreover, as Plaintiff candidly notes, even though he held this position since February 1, 2021, all the incidents that resulted in written admonishments occurred during the first weeks of September, and all took place during the month his appointment expired. All these facts cast doubt on Defendants' proffered non-pretextual reasons, including Defendants' argument that Defendant Olivera simply followed the recommendations of the Human Resources Department in not renewing Plaintiff's appointment. The last-minute evaluation and the reprimand letters are suspect for the reasons already mentioned, and could indeed be a basis for a jury to conclude that Defendants were fabricating reasons to pad Plaintiff's employment record with complaints to justify the decision not to renew his appointment.

There are other disputed factual issues as well, including the due process violations in failing to hear Plaintiff's side of the story via a hearing, which Defendants rebut by saying it was not necessary because Plaintiff was only reprimanded, and a hearing is only necessary for suspended employees. In dispute as well is Plaintiff's allegation that Defendant González issued the reprimand letters contrary to municipal regulations because municipal policy only permits the Mayor to carry out such an action. Thus, Plaintiff contends Defendant González acted *ultra vires* in issuing the written reprimands to him, a fact readily admitted by González himself during his deposition. Defendants' position, however, is that the Mayor had authorized department heads to issue written admonishments and reprimands, an instruction that Defendant González apparently failed to receive.

In any event, these issues of material fact all go to the heart of Defendant's proffered lack of discriminatory animus, and serve as additional reasons why summary

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 15 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 15
_____

judgment is not appropriate at this juncture. To find in Defendants' favor on this element requires the Court to engage in "impermissible credibility determinations and factual conclusions", which are inappropriate at this juncture. Caraballo-Rivera v. García-Padilla, Civil No. 14-1435 (DRD), 2017 WL 4417614, at *9 (D.P.R. Oct. 3, 2017). Whether Plaintiff was, in fact, a poor employee with an attitude problem or whether Defendants simply did not want a PDP's employee campaigning against an NPP's mayor is a matter for the jury to assess at trial.

### B. Qualified Immunity.

Defendants urge the Court to grant this remedy in their favor for the same reasons alluded to in the political discrimination claim, to wit, that Plaintiff has failed to meet his *prima facie* burden. Since the Court has already found against Defendants on that matter, this request ultimately falters as well.

The qualified immunity doctrine is known to protect public officials from "the specter of damages liability for judgment calls made in a legally uncertain environment." Ryder v. United States, 515 U.S. 177, 185, 115 S.Ct. 2031, 2037 (1995). A two-part test shapes the qualified immunity inquiry, which requires the Court to ascertain the following: 1) whether the facts establish a violation of a constitutional right and 2) whether the constitutional right at issue was clearly established at the time of the alleged violation. Cortés-Reyes v. Salas-Quintana, 608 F.3d 41, 51 (1st Cir. 2010).

Both questions are matters of law for the court to decide. The First Circuit, however, has expressed that the "reasonableness of the violation," although also a question of law, must be determined by the jury when there are factual questions remaining, particularly questions pertaining to intent. Acevedo-García v. Vera-Monroig,

Case 3:21-cv-01620-CVR   Document 65   Filed 04/03/24   Page 16 of 16

Javier Mercado Vázquez v. Hon. Virgilio Olivera-Olivera, et al.
Opinion and Order
Civil 21-1620 (CVR)
Page 16
_____

351 F.3d 547, 563 (1st Cir. 2003); Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 83-84 (1st Cir. 2006). That is, "while preliminary factual questions regarding qualified immunity are sent to the jury, the legal question of the availability of qualified immunity is 'ultimately committed to the court's judgment.'" Id.; (quoting Acevedo-García, 351 F.3d at 563).

As previously discussed, issues of fact remain as to the possible political motivation behind Defendants' actions at the time of the alleged violations to Plaintiff's rights. Therefore, the Court cannot determine whether the qualified immunity defense is available to Defendants at this time until the factual disputes are resolved by the appropriate trier of fact, the jury. Caraballo-Rivera, 2017 WL 4417614, at *13.

Accordingly, the request for qualified immunity at this time is DENIED without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' "Motion for Summary Judgment" (Docket No. 37) is DENIED.

The Court will set a Pretrial/Settlement Conference and the Jury Trial via separate Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 3rd day of April 2024.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE